Good morning, everyone, and welcome to the Ninth Circuit. We're here today to hear the case of Lezmond Mitcheel v. United States. The total time for argument is shown on the clock, and if you want to reserve some time for rebuttal, please let me know, and I will do my best to remind you. Counselor. Your Honors, good afternoon. My name is Jonathan Amanoff from the Public Defender's Office, and I am at Co-Counsel Celeste Bach. You represent Lezmond Mitcheel. Your Honors, I understand that there are several members of the Slim family in the courtroom today, and I would just respectfully like to acknowledge their presence as well. I appreciate that, Counselor. Just for my part, I'm having a little trouble hearing you. Oh, should I move these closer? Is that better? On my end, it is. Good? Yeah. Okay. Thank you. That's fine. Thank you. Your Honors, I'd like to begin my argument this afternoon by addressing the merits of the Rule 60B motion and how the District Court abused its discretion with its narrow reading of the Peña-Rodriguez case. After that, I'd like to spend some time discussing why interviews with jurors are so crucial in overcoming racial bias discrimination, and I do plan to reserve my final four minutes for rebuttal if possible. All right. Your Honors, the Peña-Rodriguez decision, in the majority's own words, is part of a continuing effort to overcome racial discrimination and part of a maturing legal system. That maturation was embodied by the Court's decision that 606B must give way in the face of evidence of racial discrimination. And likewise, Rule 39.2 must also give way to allow petitioners the tools to uncover that racial discrimination. 39.2 did not give way here, obviously. So Rule 606B is a question of admissibility. So Peña-Rodriguez did say that gives way, as you point out. There's language, though, in Peña-Rodriguez that says the method of collecting that information will be determined by local, by rules, by bar rules, by local rules. How do you explain that language? So the language I believe you're referring to is when the Court refers to the practical methods. Exactly. And my feeling is that this rule is not a practical method. It's, in fact, an all-out bar to getting to that information. And as Your Honor mentioned, the Supreme Court noted several examples of the types of rules that limit attorneys' contacts with jurors after trials. Well, the rule doesn't all-out bar. The rule requires a showing of some kind before you can do it, right? Or is it your position that because it requires interrogatories to be sent, it's an all-out bar? I think there's several reasons why it bars. I mean, it certainly bars post-conviction counsel from any investigation because the time limit is within the time for a new trial. So it would only ever be the trial attorneys who could move for this kind of evidence, and post-conviction counsel would never be in a position to do it. But in addition to that, I think the interrogatories sort of prevent us from doing this kind of investigation because, as the Supreme Court noted in Peña-Rodriguez, this is not the type of evidence that you are going to find with sort of simple questions. These aren't sort of objective issues. These are the types of things that you uncover through discourse, through conversation. Yes, ma'am. Why is that so? Some of what you're talking about seems to me you uncovered in jury selection. That's some of what is happening during voir dire, right? Some of it, Your Honor, yes, but I think the Peña-Rodriguez decision makes very clear that voir dire is not enough, particularly when it comes to racial discrimination. I mean, we wouldn't need Peña-Rodriguez if voir dire was enough because he wouldn't ever have a bias juror. Peña-Rodriguez is a different circumstance. Peña-Rodriguez is a circumstance where there was something known, a reason for concern, right? And then the question is, as Judge Ikuda mentioned, then the question is, when does it become admissible? And the Supreme Court has told us it's very important at that point that it be admissible and that the evidentiary rule has to give way, right? Yes. Right. So it seems to me there's different parts of the local rule for which you arguably didn't satisfy, where you'd have a much stronger argument that those parts of the rule would have to give way if there were good cause, right? The time limit, for example, the 10-day time limit, for example, failure to comply with some of those components of the rule. I can understand you might have a very strong argument that those parts of the rule would have to give way in light of Peña-Rodriguez, but what about the bare showing of what seems to be the core of the problem here, the showing of good cause or reason for concern? Your Honor, I think the specific facts of this case could give rise to good cause, but I think the Supreme Court also makes very clear that racial bias is something different. It doesn't fall in line with standard juror misconduct. The Supreme Court refers to it as a recurring evil. Right. So is it your position, then, that this would kick in and come into play? There would be the right to this kind of discovery after every verdict? I think if the court was looking for some way to limit this rule, I think you could say every verdict in a capital case. I think capital cases are particularly concerning for racial reasons. But, frankly, I don't see why we would want to limit an investigation into racial bias in every criminal case. Well, I'm not sure why I would see why we would want to, but that's a different question than whether the Supreme Court in Peña-Rodriguez told us we had to. And so my question is, do you read Peña-Rodriguez as saying it's not a capital case, as I recall? That's correct, yes, Your Honor. So do you read it as holding that in every capital case, even without a showing of good cause or substantial reason to think there was racial prejudice, you are nonetheless entitled to interview jurors? My feeling, Your Honor, is yes. I think that the court— Tell me where it says that. That's my difficulty. Justice Kennedy even goes through—he says, look, we understand there are still local rules and other things that prevent you from doing this, but many times, as in this case, somebody will come forward with the evidence, and that's all we're really deciding today. Now, it may be the necessary implication of Peña-Rodriguez that these other things follow, but I'm trying to figure out whether the case actually holds that. If I could make a couple of points, Your Honor. First of all, the local rules that the Supreme Court cites in Peña-Rodriguez— so it cites one from New Mexico, one from Massachusetts, one from Florida, and one from Colorado— none of those rules are as restrictive as this rule. Well, that may well be, but the court wasn't saying these rules are okay and other ones are not. What the court was saying was we recognize there may be a barrier in local rules and in other places to going forward and discovering this evidence, but in many cases like this one, people will come forward with it anyway. So I have a hard time reading that case as doing anything but leaving open what appropriate restrictions might be as opposed to deciding that they don't exist at all. I do agree that I think the Supreme Court leaves it to us for now to figure out what those appropriate mechanisms are. And if they do leave it to us, then here's the problem that I was trying to get to. We have some Ninth Circuit cases, Cupp among others, that say in the absence of a showing of some reason to suspect that the jury engaged in racial bias, you don't have a constitutional right to talk to the jurors. Because the Supreme Court leaves that issue open, can we find that Peña-Rodriguez is clearly inconsistent with our prior case law? In other words, is this an issue for an in-bank court, not for a three-judge panel? I don't think it is at this point, Your Honor, because I think Peña-Rodriguez marks a change in the law, and you wouldn't necessarily be overruling Smith v. Cupp at this point. I don't need you to do that today. Well, but it may be a change in the law that doesn't affect the validity of our prior law. That's what I'm asking. Our general rule is that if the Supreme Court decides something, we still stick to our prior law unless the Supreme Court decision is irreconcilable and necessarily incompatible with our prior law. So if the court leaves it open, how can we find it incompatible? I don't think Smith v. Cupp touches on this particular local rule. And I think what you can do— The second one does. Is it the Eldred case, the case that came out of this circuit? It was a prior version of this rule. But the Court rather clearly said you don't have a constitutional right to talk to jurors in the absence of some showing of racial prejudice. I don't think we need to necessarily find a constitutional right to speak to jurors. I think what we need to find is in the service of rooting out racial discrimination, the local rule needs to bend in the same way that the Federal rule of evidence needs to bend. But, Counsel, that's the part that I would be willing to give you. I'm trying to get to you — get to — for me, which is the tougher point. Is it your — and there's two parts to it, right? Is it your position that it has to bend in every case, whether there's a showing of cause or not? I think you've answered that. I think your position is yes. I think yes. My fallback would be if the Court is looking for something a bit more restrictive, I certainly think capital cases. All right. So if I could get to — because your time is ticking, and it's terribly important for me, anyway. Yes, Your Honor. You alluded a couple of times to the fact that you think there was good cause or some cause or substantial showing, you know, factually. Could you tell me what is your strongest case for that? My strongest argument for good cause? Aside from the Peña-Rodriguez case itself, I think the individual facts of this case. I know the Court's aware of this already, but I'm going to point out that this is the only Federal capital prosecution of a Native American in the modern history of this country. Yes. Like, the jury selection in this case resulted in a jury of 11 white people and only one Native American. But you appealed all those issues and lost on them. I'm sorry to say. I wish the government had not decided to bring this capital case over the objections of the Navajo Nation. Yes, Your Honor. But it did. And all we're here today is about this 60B motion. So why does any of that raise a significant prospect of racial bias? Because I recall the district judge in this case asked each of the jurors to certify that they had decided the case without regard to racial bias. Yes, Your Honor. That's a standard portion of the Federal Death Penalty Act. But I just would remind the Court that that certification is individual to each juror. So what the juror is certifying is that juror herself wasn't motivated by racial bias. It doesn't speak to anyone else. Well, I guess I'm asking, other than the general background of the case, is there something that occurred during the case or during the juror deliberations that you can hang your hat on to say that's a significant showing? This is exactly the problem, Your Honor, is that we haven't had the ability to investigate this. And so because of the Supreme Court mandates of heightened reliability and anti-arbitrariness, we need to be able to investigate. I can't answer your question because I haven't been allowed to investigate. And we have been asking since inception. Well, you haven't been allowed to investigate by querying jurors. But whatever other investigation you've done or review of the record, unlike Judge Christin, I'm asking, what is it that we can find that a significant showing was made on or that probable cause or good cause was shown other than the general background of the case? I mean, aside from the general background of the case, I would argue some of the prosecutor's closing arguments. Please. There was specific reference in the prosecutor's closing argument which this Court found inappropriate but not reversible error. The Court didn't find that part inappropriate. Actually, I've gone back and reread it. And the Court found another part inappropriate. That part, it said, was a fair response to the fact that the judge had let the letter from the Navajo Nation in that said we oppose the death penalty. And I also went back and read Judge Reinhart's dissent because I so much agreed with it. But he also didn't dissent on that part. He didn't say that was error. You're right. So I think you're overreading that part of the decision. I believe that this Court found that the prosecutor's reference to Tombstone and the fact that had this case occurred sort of in the days of the Old West, Mr. Yeah, but that's different than the remarks that had to do with the defendant being Native American. Maybe I could talk for a moment about those remarks. As to those, the Court of Appeals actually found that they weren't error at all. Okay. Well, so I was speaking about the Okay. You're talking about the other one now. If I could. Yes, please. Yeah. So the prosecutor specifically referenced Tombstone and the Old West, which I think quite clearly brings up the sort of days of the Cowboys and Indians where the Indians were always labeled in American media as the bad guys. And reference to this in this case, I think for most Okay. So opposing counsel is going to get up and say that there's a statement that was inappropriate at best by the prosecutor, and I'm not trying to make light of that statement, and that in response to it, the trial court required each juror to certify that the verdict was free from racial bias. Yes, Your Honor. What is your best response to that, please? My best response to that is these instances of racial bias that take place in the jury room often come to light when someone points out someone else's bias, not their own. That's how it came to light in the Pena-Rodriguez case, and it's that investigation that has not been done and that this personal affirmation does not go to. The district court noted that he had instructed the jurors or jurors had instructed that they could speak to the lawyers or speak to anyone and that the lawyers could and the fact that the jurors did not identify any issues with respect to bias, racial animus or bias, he thought that was significant. What's your response to that? A few responses, Your Honor. First of all, the lawyers were not permitted to approach the jurors. It was only the jurors who were allowed to approach the lawyers. And they were told as much? Isn't that right? The lawyers were explicitly told you cannot approach the jurors. Oh, the jurors. What were the jurors told about their ability to come forward? The jurors were told as they were leaving the courtroom that they could approach the lawyers if they wanted to. Which is Judge Ikuda's point, right? I just want to make sure you're not contesting that we have a clear understanding, a mutual understanding about that instruction. Yes, yes, yes. And they didn't approach counsel? My understanding is that none of them approached. Assume that's the local rule as applied. And I can talk to a lot of Arizona lawyers in the courtroom, but this is what always happens at the end of jury trials here. The judge says to the jury, you don't have to talk to the defense lawyers or the lawyers, but if you want to, you can either wait in the jury room or they'll come and see you or they'll line up in the hallway. But at least in this case, we know that's how the local rule was applied. Yes, Your Honor. If it's applied that way, does it contravene Pena-Rodriguez? In other words, we say to the lawyers, the juror, any juror who wants to talk to you will come and talk to you. If it's applied that way, it's not an absolute ban. Does that violate Pena-Rodriguez? I think in this particular circumstance it does for a couple of reasons. This was a very lengthy trial. The facts of the case are not pleasant, and I'm sure the jurors did not want to linger after the fact. Well, we just don't know from this record, do we? Exactly. We really don't. So nobody came back to the judge and said, Judge, none of them will talk to me. For all we know, defense counsel talked to every juror after the verdict. I can tell the court that there's no indication of that in trial counsel's files. And if we want, it may perhaps— And I must say, I tried a lot of cases, and I never put that in my files either because you couldn't use it. Fair enough, Your Honor. But the lawyers in this case have also been deposed. There were fairly lengthy depositions. And is there a deposition in the record in which they're asked whether they talked to the jurors? I'm not sure if they were specifically asked. Yeah, I couldn't find any. So we just don't know. Yes? I mean, you'd like me to suppose that they didn't, but we just don't know. Yes, there's no indication that they did. But I cannot affirmatively say, no, they didn't. But the other thing, Your Honor, is Mr. Mitchell had just been sentenced to death. I can't imagine that the lawyers were running out of the courtroom to talk to the jurors as opposed to sitting there with their client after he had just been sentenced to death. I think that kind of strains the imagination a little bit. Do you want to save time for rebuttal? I would. Thank you, Your Honor. We'll hear from the government. May it please the Court. Good afternoon, Your Honors. My name is William Voigt. I'm an AUSA from here in Phoenix on behalf of the United States. The district court did not abuse its discretion in denying what was an untimely, procedurally defective, and substantively meritless motion. I'd suggest you might profitably use your time on the third of your points. That's the one that I really want to hear about. I'm not very impressed by the untimeliness or procedurally defective parts of your argument. Certainly, Your Honor. Then I'll turn directly to Pena Rodriguez. It does not create a new constitutional or other right to interrogate jurors 15 years after a trial with no showing of good cause whatsoever. The district court did not abuse its discretion in applying the rule and properly relating the rule to Pena Rodriguez. The district court recognized that there was a requirement of a preliminary showing consistent with Pena Rodriguez saying there must be a threshold showing to go forward. But it said what this bars is baseless and speculative inquiries about jurors, the equivalent of a fishing expedition. And here the defendant has never been able to show any convincing case that any of his jurors was infected by racial animus. I do think that it is important to note the standard in this case, as Judge Hurwitz did. He does have to show it's clearly reconcilable with this Court's prior precedent, not just in Smith v. Cup, but also in the United States v. Eldred case involving a prior decision of this Court involving this very local rule. And I also think, although it's an unpublished case, the Atkins case that we cite post-Pena Rodriguez is instructive. It also concluded there was no problem with the denial of a motion to interview  Let me pose a scenario for you. In this case, although the trial judge mentioned several things, the meat of her denial of the initial motion in 2009 was, look, it wouldn't be admissible anyway. See Rule 606. She says a couple other things, to be fair, but that's the meat of it. We now know that's not true. Therefore, aren't they entitled at least to go to the trial judge and try to say, knocking that out of it, should we get the ability to interview? I think they can go to the trial court judge, Your Honor. I don't think that they can show good cause. So your view is that Judge Campbell actually analyzed that and said, okay, I'll put aside whether or not this would be admissible. I'll just look to see whether you've shown good cause. I think the citation to Rule 606B was to explain the underlying concerns that animate the reason that under prior precedent and numerous cases recited in both district courts' orders, you don't get to go and interview jurors. You have to make some sort of threat. So let me just change the facts a little for you. Let's assume that the trial judge in 2009 simply said, I'm turning this down because it wouldn't be admissible in any event. See Rule 606. Now they come back and say Peña-Rodriguez has vitiated that reasoning. Aren't they entitled to a new shot at persuading the trial judge? I think reserving the procedural argument that I think I won't spend time on, then yes, I think you can come back and say if there is a new rule and we lose on our procedural argument, you can bring this up. I would say there is nothing new that in terms of the facts that would justify this in terms of racial animus or anything else that changed between the first order and the second order. So I don't think the prior judge's ruling would be wrong. Now this takes me back to the prior judge's ruling. Do you read that prior ruling as resting on the facts of the case or only on the unavailability under Rule 606 of any evidence that might be discovered? I think it rests on both of those things as well as the procedural rulings that I understand the court would not like me to spend time on. Well, I mean, I just said for me it would be helpful if you got to the third first. I'm not telling you not to address it. I do think, Your Honor, there was no error back in 2009. But certainly, even if they get a new shot, Judge Campbell, whose order is being reviewed here, did not make any error whatsoever in denying the motion because he recognized Peña-Rodriguez was a precedent. He didn't say I don't have to engage with it. He specifically engaged with it, and he recognized that there was no good cause because there was no preliminary showing. I do think that it is also notable that a number of times the defense has suggested there is this new constitutional right but recognized that it has to be an inference. It has to be something the court takes the next step to do. A district court doesn't abuse its discretion in declining to reopen a case when we're inferring what might happen in the future. And so it was appropriate for the district court to deny it on that basis. Well, if it's the necessary implication of a Supreme Court decision, which is, I take it, what your friend is arguing, and it's the law, because it's a necessary implication, then a court would abuse its discretion by making a decision based on the wrong legal principle, wouldn't it? I would agree that if you can meet the clearly irreconcilable threshold that Your Honor noted for Miller v. Gammy, then, yes, it would be entitled to it. No, I was asking a different question. Let's just assume that it – I'm not sure that it does, but let's just assume it naturally followed from Peña-Rodriguez, that because you could get the stuff and you admitted you had a right to discover it. If that were true, if that were a true legal principle, it really wouldn't matter that Peña-Rodriguez didn't decide it, would it? I would – I think, Your Honor, it would really depend on how close it got to it. And certainly in this particular case, there's nothing in the language of Peña-Rodriguez that suggests that. The explicit holding is cabined to an exception to the no impeachment rule of 606b. There's nothing in any part of its reasoning that suggests you have a mandatory right without good cause. What do you do with Justice Alito's dissent? He says in dissent, look, you claim you're not doing it, but what naturally follows from what you're doing today is that all local rules have been swept away. Now, I take it that there is some license for exaggeration in dissents, but why wasn't he right? I think that – I would offer two responses, Your Honor. Number one, obviously, as a dissent, it's not something that's going to be an abuse of discretion for the Court not to follow. And also, I think he probably wouldn't be endorsing the broadening that he was himself concerned about. But number two, I think the real concern, to the extent that the dissent had a point – and I'm not saying it did, we're governed by the majority ruling and it seems right to me – but that's a concern about other types of expansions, not a sweeping away of every sort of rule that is out there. I think the majority – It comes close. It comes close to suggesting that we have to really take a hard look at that. If it were a question of a hypothetical where there was really a concern for racial animus, it seems to me that that case is a powerful argument for opposing counsel to say this is just too important. So if it's a 10-day requirement, if it came forward on day 11, if there weren't the interrogatory, if there wasn't the affidavit, those seem to me to be very qualitatively different than your stronger argument, which is the absence of, at least from your position, the absence of an initial showing of good cause. I recognize that, Judge Kristen. I think that regarding the timeliness requirement, it does serve important functions and I won't push on the issue if it's not helpful to the Court. But 16 years after a trial, in this particular case, under these facts, it's unlikely you're going to be adding good information to what were substantial contemporaneous indicia of reliability. These jurors not only signed this certification attesting they did not make a decision based on race, they opened themselves up to really invasive voir dire that included five questions, questions 40, 41, 42, 43, and 45, that specifically were targeted to experiences with Native Americans and reservations. They then had two questions in individual one-on-one oral voir dire about whether they had any experiences or any attitudes about Native Americans that would cause them to not be fair. And there was nothing in any part of their lives that were revealed in this exhaustive voir dire. There was nothing in any part of the trial. And there's nothing in the 16 years that have passed from the moment they signed that certification and walked out of the courtroom to today, or any of them, by any in that room made a decision based on racial bias. But this is a rather unique circumstance, as your friend points out. The only capital case in the United States involving a Native American, by the government involving a Native American, the nation opposes the penalty. We've got all these other various factors in it. Juris election may have been perfectly appropriate, but relatively few, only one Native American in the jury. Given that confluence of facts, why doesn't that meet the good cause standard? I don't think so for a few reasons, your Honor. And I absolutely recognize that there are overarching political interests that are being described here. And I also recognize you didn't make those decisions. I wasn't even a lawyer at the time that this case was tried. But what happened in this particular case was a decision was made to apply the carjacking resulting in death statute to a carjacking resulting in death. There are many instances of the relatively small population of people on federal death row, but a number of them have been convicted under that statute. So it's a statute of nationwide applicability. And that is an issue the previous panel decided and is not in front of us. I'm just asking whether that confluence of factors, whether or not justifying the Department of Justice's decision or not, whether that confluence of factors makes this unusual enough so that we have good cause as our rule requires. I don't think so because none of it's tied to a clear statement by a juror that racial animus was motivating their decision. And that's what Pena-Rodriguez says is necessary. I would also like to point out, in addition to what your Honor pointed out about the closing argument. Wait a minute. Can I just go back to that? Your position is that a juror would actually have to sort of confess. I think that a juror could report another juror. A juror could himself confess. A juror could make a public statement that's reported. I think there are myriad avenues by which, if this sort of evidence existed, it could come up and could create good cause under the rule. In addition to the fact that this Court evaluated that particular part of the closing argument and did not find error, the original district court judge did as well and specifically rejected the defendant's argument. And I would point the Court to the excerpts of record, page 14, just to quote the sentence, quote, contrary to Petitioner's assertion, the Ninth Circuit did not find the prosecutor's comments during closing argument concerning Petitioner's religious and cultural heritage to be improper. And so the parts about which this Court was reasonably concerned of the prosecutor's closing argument didn't have to do with religion. You know, if that had been the case and we found the error harmless, wouldn't that be another circumstance where good cause might exist to talk to the jurors? It could be, Your Honor. I think that, as the district judge said here, Judge Campbell, in his order, it's a case-by-case analysis. You look at all the facts involved in the particular case, and he did that. And I think that if this Court does as well, it looks at strong vautier procedures, certifications that they were not making decisions based on racial bias, and 16 years of silence when the jurors were specifically told, as has been noted, the lawyers are going to stand by that door. If you want to talk, you can. And they knew they could also talk at any other time. And there's never been any hint by any of them that they were motivated by race. We've been talking about Judge Campbell's ruling as if we were reviewing it de novo. Could you fit it into what we're actually reviewing, which is the Rule 60B context? Yes, Your Honor. It is a review for whether there is an abuse of discretion in refusing to grant relief under Rule 60B that is supposed to be rare and extraordinary. So even aside from the clearly irreconcilable point, even on the face of the Rule 60B, it is hard to say that this case merits rare and extraordinary circumstances to reopen a judgment. Well, I take it it depends on which part of your friend's argument we focus on. If the argument is, and I think this is his broad argument, Peña Rodriguez says he must be allowed this discovery as a matter of law, then we could have an abuse of discretion where somebody applies the wrong rule of law. If the question is different, which is whether the judge abused his discretion in deciding there wasn't good cause, then we would be quite deferential. But in the first circumstance, it seems to me we would just try to figure out what the rule of law is, wouldn't we? I agree, Your Honor. If the issue is a question of law, then errors of law are generally considered, per se, abuse of discretion. In Gonzales itself, wasn't there a change in law regarding the statute of limitations? There was, Your Honor. And did the court say that was sufficient, that that was extraordinary circumstances to require a grant? Your Honor, a change in law can be an extraordinary circumstance. But it wasn't in that case? No. It's not a per se rule that a change in law would require a grant of a 60 v. 6 motion. I think that's right, Your Honor. But I think that the as a general proposition, if the court concludes that the district judge made a legal error here in terms of whether Peña Rodriguez says you have a new constitutional right to interrogate jurors, then I certainly understand why this court is going to, is not going to review that with the deference that it would afford to an analysis of the facts. But I don't think that there's anything at all in the record here that would, in the language or the reasoning of Peña Rodriguez that would suggest such a thing. I also would note, Your Honor, that there are very real harms to the jury. We're not just talking about a rule that's applied formalistically. This was a very gruesome case that these jurors had to sit through for almost two months. And the district court did promise them as they walked out those doors, if you want to talk to someone, that's fine. But if you don't want to do that, no one's going to come put this into your head again. There may be circumstances where that promise has to give way. But this isn't one of those circumstances. It was a promise that is worth keeping. Your Honor, I, unless there are further questions. I took you away from your other two arguments. I don't want to stop you from making them. I just wanted to make sure you got to the substance. Oh, absolutely, Your Honor. And I'll just touch on them briefly because I do believe that the timeliness requirement does serve very important interests in a context of a case like this. And in a different case, it may be different. But when 16 years have passed, you're unlikely to get good information, finality interests in the judgment have settled in a case where it's gone up and down the federal courts of appeals twice and has been uniformly affirmed. And all the jurors may not even still be available. They certainly can't be said to have particularly fresh memories of what happened. So the timeliness requirement does have a very important function in the context of this case. Could I ask a somewhat unrelated question? We're aware of the case pending before the D.C. Circuit, a different issue, different parties than what's before us, but related. So does that, the conclusion of that case, what effect, if any, does it have on our decision in this case? It wouldn't have any effect on your decision in this case. Mr. Mitchell was a party to that at one point, and he withdrew himself as a party. My understanding of the status of that case is that there is an oral argument scheduled in mid-January before the D.C. Circuit. And so until he's a party, it wouldn't affect the outcome of this particular case. I also think the interrogatories do serve an important function as well in this particular role because the Court has expressed concern going back to the 50s in the Northern Pacific Railway case about types of questions that can be harassing to jurors, and the manner has to be appropriate, and the content of the questions has to be appropriate. So, again, I — Although, I'm not sure you need to go there, and this is what concerns me. Let's assume we had a case with a strong showing of racial bias. A juror made a newspaper statement yesterday that said we all got together and decided it would be a good idea to execute this Indian. I'm not sure under those circumstances that a local rule that restricted you to written interrogatories would be sufficient. That's not your case, but that's why I think Judge Christin was trying to focus on the parts of the rule separately. Once you establish good cause, the question of whether the rest of the rule might stand up under scrutiny strikes me as a harder question. I think it would be a hard question really dependent on the facts of the case. Perhaps there could be circumstances in which a requirement of written interrogatories would go too far. Although, this particular local rule does contemplate that you can take the written interrogatories and go out and do a personal conversation because after that in the rule it says, and then you can file a second affidavit reporting back on the conversation. But I do think courts have very broad discretion as to how they craft the types of interactions that happen when they do happen post-trial. But the point is just that post-trial, Pena Rodriguez, it's easy to imagine, I think, a hypothetical where if there's a sufficient showing of cause, a court could abuse its discretion by imposing some of those procedural requirements too strictly. I agree. It could happen, Your Honor. I don't think that there is anything on the face of them that is suspect. And certainly on the facts of this case, since it doesn't reach that far, I think it would be hard to say it would be an abuse of discretion for the district court, as she did here back in 2009, to say your six years untimely, nothing has happened in those six years that's relevant to your motion, and you haven't followed the rule in providing the interrogatories. That's an independent basis. Do we have case law discussing circumstances where jurors have been asked to verify not only that their own verdict was individual vote, was not infected by racial bias, but also to certify that the verdict as a whole was not, that they didn't witness that? I'm not aware of that, Your Honor. And the certification here does say each of you individually. Yes. However, they all did sign one form. Each of them put their name on that one form. But you've heard opposing, I don't mean to take up your time, but you've heard opposing counsel's response to that, which is it's one thing for a juror to verify that he or she did not allow her own vote to be infected by racial bias. And it is, I think, a fair point that in cases where this is raised, it's virtually always raised by another juror reporting, having witnessed something, particularly overhearing a comment within the confines of the jury deliberation. And that's exactly what defense counsel wasn't able to explore. I agree. I think it is most common that it would be one juror reporting on another juror. And so the certification in this case, although a very substantial protection, is just one part of the many protections that existed. Right. So just quickly, I think you answered this question. My question was, do you know of any case where we've addressed that type of certification? I have not seen it. And I'm asking whether you have. I'm not, Your Honor. And I believe that – I know that this is in the language of the statute, 3593F. And so I believe the language of that particular certification was mandated. Thank you. I see that my time runs short. So unless there are any other questions, the government would respectfully ask the Court to affirm the judgment of the district court and lift the stay so that the judgment may be carried out. Thank you. You have some time for rebuttal. Thank you, Your Honors. The government mentioned that the effects of this case are gruesome. I agree with that. I would like to highlight that the defense maintained through penalty phase that there was very little evidence that Mr. Mitchell was a direct participant in these murders, and we stand by that. Your Honor, Judge Christin, you were asking me about good cause, and I want to make sure that I've answered your question as well as I can. Our basis for good cause are, first of all, Peña Rodriguez. That is a major change in the law. 606B has existed in some form or another since the 1700s. The Supreme Court has been asked on at least two occasions to find exceptions to 606B, and it's denied it each time on nonracial reasons. In Henley, we didn't hold that there was an exception for racial bias, but in Henley, we stated that in dicta. So we've already addressed that point, right, long before Peña Rodriguez. I believe this Court suggested that there may be an exception but never affirmatively made that finding. We didn't hold it in that case, but we certainly stated it. Yeah, as the Supreme Court summarized it in Peña Rodriguez, the Ninth Circuit sort of thought there may be, but it was never firmly held, and it was certainly not a constitutional exception. Counsel, I'm sorry. I was just going to say you don't need to spend your time trying to convince, at least for my vote, you take racial bias exceptionally seriously, absolutely. Yes, Your Honor. So I think I've tried to telegraph really clearly that those other parts of the rule, the more procedural aspects of the rule, are not what's giving me cause for pause here, which is why when you came to the podium back up to it, I was hoping you were going to speak to what's your best shot so that there was that initial what I think is a threshold requirement of reason for concern about racial bias in this case. Yes. So you want me to speak to good cause. Am I understanding correctly? I do. Okay. And, Judge, assume I'm wrong, because I think Judge Campbell said this. I know Peña Rodriguez has been decided. Yes, Your Honor. I know it's admissible now if you can get it. Yes, Your Honor. But I don't find anything else that shows good cause. That's at least the way I read his order. What else do you have beside Peña Rodriguez? So a few things. I would like to highlight that this is one of two rules in all of the district courts in the Ninth Circuit. Thirteen of the district courts out of 15 would allow this evidence to come in. Let me try again. Let's assume good cause is required. Right. Factual good cause, not a legal argument. Speaking to good cause. What do you got? Yes. Speaking to good cause, Your Honor, with death penalty cases, there is a requirement of heightened reliability. Not affording us this investigation is inconsistent with that principle. So that, the lack of an investigation, I think is good cause in and of itself. I think the risk of racism, particularly in a case that was systematically excluded Native Americans from serving on this jury for the reasons we've outlined in the briefs and only resulted in one Native American on the jury, I think that's good cause. The Supreme Court in Peña Rodriguez talks about race as being an exception to these ideas that there is a presumption that jurors don't operate with bias. Again, a recurring and familiar evil. That's what we're talking about. That's good cause. I mean, in any death penalty case with a requirement of heightened reliability and anti-arbitrariness, this is the only case in the Ninth Circuit where this type of investigation wouldn't be allowed. There's four people on Federal death row from the Ninth Circuit. Three of them come from districts that don't bar this kind of investigation at all. Why would Mr. Mitchell need to be that one exception? The purpose of this rule is to protect the confidentiality of juror deliberations. The Supreme Court has said that that confidentiality gives way when there is a concern of racism. This case is rife with concerns of racism. This is, again, the only Native American. The government rejected the Native American's request. Only seven of the jurors found the Navajo Nation's plea for this man's life to be mitigating. That is very concerning. And the fact that we have not been allowed to perform the investigation that virtually every other capital habeas petitioner that appears before this Court, that is extremely concerning. And were it not for this Court's intervention, this man would have been dead two days ago. How we could let this execution proceed without a thorough investigation is deeply troubling, Your Honors. And I don't understand what the government's concern is. We employ professional, highly skilled, highly trained investigators. No one is going to be harassed or interrogated or abused. We do this all the time. My office has been in existence for this capital habeas unit over 20 years. And not to my knowledge, in the 10-plus years that I have been there, has there ever been a complaint from a juror about misconduct on the part of our investigators. Thank you, Your Honors. Unless there's further questions. The case of Lesmond Mitchell v. The United States is submitted. We appreciate both sides' arguments. And the Court for this session is adjourned.
judges: Ikuta, Christen, Hurwitz